## Case No. 11,061.

In re PFROMM et al.

[8 N. B. R. 357.] [1]

District Court, E. D. Michigan. Feb. 21, 1873.

BANKRUPTCY—CHANGE OF VOTE FOR ASSIGNEE—CORRUPT VOTING—EFFECT.

1. A creditor may change his vote as often as he sees fit until he has signed the certificate of choice of assignee.

2. Where a creditor votes corruptly, as by reason of a consideration paid by bankrupt, his vote will be excluded.

3. An election of assignee will not be sent back because a creditor has voted corruptly, unless the result would be changed by excluding his vote.

[In the matter of John and Martin Pfromm, bankrupts.]

This matter came up on a certificate of the register. Hovey K. Clarke. It appears from the certificate of the register that at the first meeting of creditors, held on the 18th of February, for the choice of assignee, the following named creditors, who were entitled to vote for an assignee. had proved their claims before proceeding to take the vote, to wit: August Thormann, three hundred and fifty-nine dollars and sixty-one cents; Frank Maltz & Co., three hundred and thirteen dollars and fifty cents; Peter Herbste, two hundred dollars; John Grossteick, two hundred dollars; total, one thousand and seventy-three dollars and eleven cents; that at the first vote for assignee the votes of the creditors were divided between Francis G. Russell, Henry A. Harmon and Cornelius J. Reilly, neither of whom having a majority in number or value of said creditors, a second vote was taken, which resulted in a vote of three creditors, representing eight hundred and seventy-three dollars and eleven cents, for Henry A. Harmon, and one creditor, representing two hundred dollars, for Cornelius J. Reilly, It thus appearing from the vote that a majority in number and value of said creditors had nominated Henry A. Harmon as such assignee, the register proceeded to prepare the memorandum that such creditors. by their signatures, might certify their choice. Before any creditor had affixed his signature to the memorandum. Mr. John Grossteick, who had voted for Mr. Harmon, being present and attended by his counsel, Mr. W. E. Cheever, through Mr. Cheever expressed a desire to change his vote. The reason for this change of vote, as stated by Mr. Baker, in his objection filed on the 18th of February, was not stated publicly, nor was it heard by the register. The result of such change would leave the creditors equally divided in number, and would therefore result in no election. The right of the creditor thus to change his vote was objected to by Mr. H. L. Baker. who attended on behalf of Mr. L. C. Hanmer, a secured creditor, on the grounds: (1) That it was not competent for Mr. Cheever thus to declare the purpose of the creditor; and (2) that after a vote had been taken, the result of which indicated a majority in number and value concurring, no creditor was at liberty to change his vote. Upon the first point the register allowed Mr. Baker to interrogate Mr. Grossteick himself as to whether he in fact desired to change his vote. but declined to allow him to inquire as to the reason of the change.

Before proceeding to a third vote Mr. Christian Schneider, who had appeared at ten o'clock. the hour appointed for the meeting, and offered to prove his claim against said estate, but who had retired for the purpose of verifying by his books an item of his account, now re-appeared and proved his claim at the sum of three hundred and twenty-six dollars and seventy-five cents. A third vote for assignee was then taken. which resulted in a vote of four creditors representing one thousand and eighty-six dollars and thirty-six cents for Cornelius J. Reilly. and one creditor representing three hundred and thirteen dollars and fifty cents for Henry A. Har-

[1] [Reprinted by permission.]

mon; and the creditors voting for Mr. Reilly thereupon signed the memorandum certifying their choice.

Mr. Baker objecting to the confirmation of Mr. Reilly as assignee, all further proceedings were suspended, and the meeting of creditors adjourned to the 25th of February, at ten o'clock a. m., in order to afford an opportunity to certify the questions arising to the district judge for determination.

By HOVEY K. CLARKE, Register:

Form number fifteen, appended to the general orders in bankruptcy, prescribes the mode by which creditors meeting for the election of an assignee may certify their choice. Unless this memorandum shall bear the signatures of a majority in number and value of creditors who have proved their claims and are entitled to participate in the election, there can be no authentic evidence of such election, and the register must certify a failure to make choice by the creditors. The duty of preparing the memorandum for the signatures of the creditors devolves on the register. The recital it contains, as to notice, must be within his knowledge, derived from the files in his office. In it must be stated the name of the assignee chosen or nominated; and to ascertain this the usual practice is to take a viva voce vote of the creditors, and when the required concurrence appears, to prepare the memorandum for the signatures of the electing-creditors. This preliminary vote, therefore, concludes nothing. It may be illustrated by the practice prevailing in some parts of the country at political conventions to take an "informal vote" before proceeding to the final vote, by which the will of the convention shall be known. In this case the expression by Mr. Grossteick of his desire to change his vote, I accepted as equivalent to a refusal on his part to sign the memorandum which was then ready for signatures, but had not then been signed by any creditor; the effect of such refusal being to leave but two creditors, who, if they were still willing to sign, would not be a majority in number; and regarding this as a failure to certify, as required, a choice of assignee, a third vote was necessary, which resulted in the concurrence above stated.

As to the right of a creditor to change his vote at any period during the progress of electing an assignee, I do not see how it can be questioned. Such changes are often necessary to effect an election. If he change it with a corrupt motive, or if he vote originally with such motive, and that fact appear, undoubtedly the court, upon a proper showing of the facts, may apply any proper remedy. But the attempt to show any such corrupt motive, by oral interrogatories addressed by one creditor to another, during the progress of the meeting, strikes me as not only disorderly in practice, but as leaving the court without any authentic record of what might thus orally appear, and thus without adequate means to review the proceedings before the register. I do not think the right of any creditor, whose claim has been duly proved, to participate in a creditors' meeting can be impeached except upon a sworn statement of facts, either by affidavit, or upon an examination after due notice. and therefore the attempt to examine Mr. Grossteick orally, as to the reasons which influenced him to change his vote, was irregular, and ought not to have been allowed to interrupt the proceedings by the creditors to choose an assignee.

How far the affidavit of Mr. Martz, subsequently filed, shows a case proper for the interference of the court in the choice by the creditors of an assignee, is a question foreign to the purpose of this opinion. It is appended and returned with the papers at the request of the party objecting.

LONGYEAR, District Judge. The foregoing views of the register as to what constitutes the evidence of election of an assignee by creditors, and as to the legal right of a creditor to refuse to sign the certificate of an election after having orally voted to do so, are concurred in and approved.

As to the objections to the confirmation of the choice of assignee as certified, it is sufficient to observe: First. Throwing out the vote of Grossteick. who is charged with having voted corruptly, there still remains an unquestioned majority in number and amount in favor of the person certified as chosen; and it is well settled that the court will not send a case back for a new election when it is not apparent that a different result would or might be thereby attained. Second. Nothing appears upon the face of the proceedings, and no evidence is adduced to support the charges of undue influence in the election, on the part of the bankrupts, or as to the alleged unfitness of the person chosen. The objections are therefore overruled.

It results, that upon the acceptance of the trust by the person chosen, the choice of assignee in this matter. as certified, must be approved and confirmed.